# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

STEVEN B. BEARS, )
                                       Plaintiff, )
                                           v. )    Case No. CIV-16-111-SPS
NANCY A. BERRYHILL, )
**Acting Commissioner of the Social** )
**Security Administration,**[1] )
                                         Defendant. )

## OPINION AND ORDER

The claimant Steven B. Bears requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 23, 1975, and was thirty-eight years old at the time of the administrative hearing (Tr. 42). He attended high school while taking special education classes, and completed his GED, and has worked as a short order cook and cashier II (Tr. 23, 287). The claimant alleges that he has been unable to work since September 1, 2011, due to depression, bi-polar disorder, a mood/social disorder, elbow nerve damage in the right elbow, and arthritis (Tr. 286).

## Procedural History

On August 1, 2012, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 21, 2014 (Tr. 11-25). The Appeals Council denied review, so the ALJ's written opinion became the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as

defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), *i. e.*, he could lift/carry/push/pull up to ten pounds occasionally and five pounds frequently, walk and stand up to two hours each day, and six for six hours each day. Additionally, he was limited to occasionally using foot controls, hand controls, and overhead reaching, as well as climbing ramps and stairs, and kneeling; he could frequently handle, finger, and feel, as well as balance, stoop, and crouch; and he could never climb ladders or scaffolds, or crawl. Furthermore, the ALJ determined that the claimant should avoid work around unprotected heights, moving mechanical parts, and all environments with temperature extremes. Finally, the ALJ limited the claimant to simple tasks and simple work-related decisions, only occasional contact with supervisors and co-workers, and no contact with the public. Although the claimant's time off task would be accommodated by normal breaks, the ALJ did find that he required a sit/stand option which allows for a change in position at least every thirty minutes, defined as a brief positional change lasting no more than three or four minutes at a time (Tr. 16-17). The ALJ concluded that, although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, touch-up screener, semi-conductor bonder, and documents preparer (Tr. 23-24).[3]

---

[3] The Court notes that the jobs identified were named prior to the claimant's testimony at the administrative hearing although additional jobs were also identified following the claimant's testimony. Although this case is remanded for other reasons, the Court advises caution at step five in identifying the appropriate jobs.

## Review

The claimant contends that the ALJ erred by: (i) failing to properly account for his mental impairments, and (ii) failing to properly account for the evidence related to his hand and elbow impairments. The undersigned Magistrate Judge finds the ALJ *did* fail to properly account for the claimant's hand and elbow impairments, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of cervical degenerative disc disease, lumbar degenerative disc disease, carpal tunnel syndrome, osteoarthritis of the elbow, abdominal hernia, hypertension, polysubstance abuse, and major depression (Tr. 13). The medical evidence related to the claimant's physical impairments reveals that although the claimant had ulna surgery in 2008, an MRI of the right elbow on December 3, 2009 revealed that the ulnar nerve appeared to demonstrate increased signal, and there was muscular fatty atrophy demonstrated (Tr. 545). On August 10, 2012, at his cervical spine, he had multilevel disc osteophyte complexes most prominent at C4-5 and C5-6 where there is mild distortion of the anterior cord with minimal to mild central canal stenosis and at least moderate narrowing of the right lateral recess at these levels and mild narrowing of the left lateral recess at C4-5 with mild bilateral neural foraminal narrowing noted, but there was no evidence of acute cord compression. The physician also noted that the exiting nerve roots at both these levels may be contacted by the disc osteophyte complexes and may be the source of the claimant's symptoms (Tr. 387, 577).

Notes from the claimant's treating physician, Dr. Tommie Stanberry, reflect that he treated the claimant during the relevant period and as far back as March 2008 for, *inter alia*, osteoarthritis of the elbow, lumbago, a herniated disc, and muscle spasms (Tr. 390-511, 517-548). Even in 2011, Dr. Stanberry's treatment notes reflect that the claimant's elbows showed abnormalities and decreased range of motion with movement due to pain and edema (Tr. 436, 442, 447). Additionally, the claimant's back symptoms on the right lower back were characterized by pain that radiated to the hip, and arthralgias (Tr. 481). In July 2012, the claimant complained of left elbow and arm pain, that the fingers of his left hand were going numb, and that the left side of his neck was hurting (Tr. 395). The following month, he reported that he rolled a four-wheeler and reported continued pain in his left elbow and neck pain (Tr. 390).

The claimant was seen by Dr. Patrick O'Neill, D.O., on July 8, 2013, at which time Dr. O'Neill noted that the claimant had left side tenderness of the paraspinal region at L5, the iliolumbar region, the gluteus maximum, the gluteus medius, and the sciatic notch, and that his lateral flexion was limited on the left and right and extension was limited, and that he had pain with range of motion (Tr. 582). That same day, the claimant was noted to have swelling on both wrists (Tr. 582). The claimant was seen at Jordan Orthopedic Clinic on August 20, 2013, and noted to have right lateral epicondylitis, right carpal tunnel, and left carpal tunnel (Tr. 589). A nerve conduction study done the following month was consistent with compressive neuropathy of the median nerves at the wrists bilaterally, with the right side being more affected than the left, and such findings were correlative with most of the claimant's clinical symptomatology (Tr. 594-595).

Additionally, the reviewer noted that the claimant had evidence of ulnar neuropathy with slowing of the nerve conduction velocity across the elbow, but said this might not be accurate in light of the previous ulnar nerve transposition (Tr. 595). Dr. O'Neill saw the claimant on October 4, 2013, and again noted that the claimant's symptoms had been validated by the EMG (Tr. 599-600).

An MRI of the claimant's lumbar spine performed on July 7, 2014 revealed degenerative disc disease with multifocal disc bulges and ligamentous facet hypertrophy causing varying degrees of stenosis and neuroforaminal narrowing which was most severe at L1/L2 where there was severe narrowing of the left lateral recess, and bilateral pars defects at L4 with grade 1 anterolisthesis of L4 and L5 (Tr. 635-636). An MRI of the cervical spine revealed degenerative changes and degenerative disc disease with multilevel disc osteophyte complexes causing varying degrees of central canal stenosis and neural foraminal narrowing (Tr. 637-638).

State reviewing physician Mary Lanette Rees, M.D., found that the claimant could perform light work, that he could not perform constant pushing/pulling and that he was limited in the right upper extremities, but that he had no other postural, manipulative, visual, communicative, or environmental limitations (Tr. 83). Dr. Charles Clayton affirmed this assessment on reconsideration (Tr. 112).

At the administrative hearing, the claimant testified, *inter alia*, that the primary reason he cannot work is his hands, but that he is also very affected by pain in his elbow and his back (Tr. 49). He further stated that he underwent a surgery after he first injured his hand, but that his hands continued to get worse and he was "kind of gun shy about the

whole surgery thing again" (Tr. 50). As specific examples, he testified that he has difficulty telling when something is in his hand and can only hold a coffee cup if his fingers are slid through it, he could not pick a coin off a table, and a gallon of milk was his limit for picking something up with both hands (Tr. 51, 57). He noted that he had undergone a series of steroid injections for his back, but that they did not provide long-term pain relief (Tr. 53). As to his home, the claimant testified that his son takes care of mowing the lawn and cleaning, and his mother did the laundry and his grocery shopping for him, but that he could cook (Tr. 59). He was able to attend his sons' home football games (but not the away ones), and he attended church with his son on Sundays (Tr. 61).

In his written opinion at step four, the ALJ summarized the claimant's hearing testimony and much of the evidence in the record. As relevant, the ALJ found that the claimant was not credible, although the record did demonstrate that the claimant's pain was credible. Noting the claimant testified that pain prevented him from working, the ALJ found this to be not credible because he did not complain about anything in a telephone call regarding his disability application, but then a week later he filled out a functions report indicating pain every waking minute (Tr. 20, 230, 250, 252). Furthermore, the ALJ found that the claimant's ability to get his thirteen-year-old son to school and care for him upon his return, cook simple meals, drive, ride in a car, and take public transportation were daily activities inconsistent with total disability (Tr. 20). Moreover, the ALJ noted that the claimant presented for treatment of pain from planting a garden, after the alleged onset date (Tr. 21). As for the opinion evidence, the ALJ gave little weight to the opinions of the state reviewing physicians, finding them

simultaneously overly optimistic as to the ability to perform less than light work and overly pessimistic as to his pushing/pulling limitations in light of his daily activities (Tr. 21). He then elaborated a bit on his RFC findings, stating, *inter alia*, that the claimant was limited to occasional use of hand controls and occasional overhead reaching due to carpal tunnel syndrome and osteoarthritis of the elbow, and that he should avoid all temperature extremes on the right hand, but that by the claimant's own reports of functioning and ability to cook, clean, and take care of his son, he could frequently handle, finger, and feel (Tr. 22-23).

The Court finds that the ALJ failed to properly assess the evidence regarding the claimant's physical impairments. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's

attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ briefly summarized the medical treatment notes related to the claimant's carpal tunnel syndrome and elbow and back pain, but did not address the EMG findings that not only confirmed the claimant's carpal tunnel syndrome but actually validated the symptoms he complained of related to manipulation. Moreover, he repeatedly focused on the fact that the claimant is still able to drive and watch over his son as support for an ability to frequently handle, finger, and feel, but then found that the claimant could only occasionally reach in light of his carpal tunnel syndrome, *while ignoring the effects of carpal tunnel on the hands and fingers*. This indicates a deliberate attempt to pick and choose among the evidence in order to avoid finding the claimant disabled. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

    The claimant also asserts as part of his argument that the ALJ's error in assessing his RFC is intertwined with his error in assessing his credibility, and that his own testimony is consistent with his actual limitations. The Court recognizes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements

pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). In light of the ALJ's use of boilerplate language, combined with the fact that he heavily relied on questionable levels of daily activities, the Court finds that remand for proper analysis under the new guidance would likewise be advisable here.

Because the ALJ failed to properly conduct an analysis of the evidence and the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**